Todd F. Jackson – SBN 202598
Nina Wasow – SBN 242047
Julie Wilensky – SBN 271765
LEWIS, FEINBERG, LEE,
RENAKER & JACKSON P.C.
476 9th Street
Oakland, California 94607
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
tjackson@lewisfeinberg.com
nwasow@lewisfeinberg.com
jwilensky@lewisfeinberg.com

Garrett W. Wotkyns*
Michael McKay*
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
8501 N. Scottsdale Rd., Suite 270
Scottsdale, Arizona 85253
Telephone: (480) 428-0145
Facsimile: (866) 505-8036
gwotkyns@schneiderwallace.com
mmckay@schneiderwallace.com

Scot Bernstein – SBN 94915
LAW OFFICES OF SCOT D. BERNSTEIN,
A PROFESSIONAL CORPORATION
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533
swampadero@sbernsteinlaw.com

Todd Schneider – SBN 158253
Mark Johnson – SBN 76904
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
180 Montgomery Street, Ste. 2000
San Francisco, California 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com
mjohnson@schneiderwallace.com

*Pro Hac Vice application forthcoming

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| JOHN TEETS,<br><br>            Plaintiff,<br><br>      vs.<br><br>GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY,<br><br>            Defendant. | Case No.<br><br>**COMPLAINT (ERISA)**<br><br>**CLASS ACTION** |

COMPLAINT                                                           CASE NO.

**PRELIMINARY STATEMENT**

1. Guaranteed Investment Contracts ("GICs") are a financial product offered by insurance companies. Investors – in this case retirement plans – pay money in exchange for a contract promising a return on the investment. A GIC is a type of group annuity contract.

2. Defendant Great-West Life & Annuity Insurance Company ("Great-West" or "Defendant") operates the Great-West Key Guaranteed Portfolio Fund ("the Fund"). Retirement plans in which Plaintiff and the proposed class are participants and beneficiaries ("the plans") invest in the Fund pursuant to a GIC that governs the relationship between the plans and Great-West, referred to herein as "the Contract." The Contract enables Great-West to set its own compensation as a service provider to the plans. As Plaintiff and the proposed class will show, Great-West has exercised its discretionary authority to retain large profits rather than crediting the participants and beneficiaries of the plans with appropriate returns.

3. Participants in retirement plans that invest in the Fund are credited at an interest rate which Great-West can set (and change) in its sole discretion. The credited rate is applied to all participants in all plans that invest in the Fund. The Contract does not disclose how the credited rate will be determined nor does it not specify the credited rate.

4. Throughout the relevant time period, Great-West invested the retirement assets it received pursuant to the Contract as it chose, and retained for itself the difference between the investment earnings on those assets and the interest it chose to credit to the plans, otherwise known as "the spread." Even while it enjoyed earnings amounting to hundreds of millions of dollars in net investment income, Great-West reduced the amount credited to the plans and their participants and kept the enormous spread. Great-West retained this spread *in addition to* the service fees it charged the plans. In other words, the Contract allowed Great-West to set its own compensation as a service provider to retirement plans, and to collect unreasonable and/or excessive fees from retirement plan investors.

5. The Contracts were and are plan assets of the retirement plans holding them. Because Great-West exercised discretionary authority over the administration of the Contracts, it owed fiduciary duties to plan participants with respect to the Contracts. Great-West breached its

fiduciary duties, and engaged in transactions prohibited under the Employee Retirement Income Security Act of 1974 (ERISA), by unilaterally setting its own compensation and by charging excessive fees incident to administering the Contracts.

6. As a result of Great-West's actions, the plans' assets were diminished. Plaintiff seeks damages and equitable relief on behalf of the class.

## JURISDICTION

7. Plaintiff brings this action under ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2), (3). This Court has subject matter jurisdiction over Plaintiff's claims under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

## VENUE

8. Venue lies in the Eastern District of California under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant may be found in this District and/or the alleged breaches took place in this District. Venue also is proper under 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## THE PARTIES AND THE PLANS

9. Plaintiff John Teets was a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Farmers' Rice Cooperative 401(k) Savings Plan ("the Plan"). At all relevant times, Mr. Teets directed that assets allocated to his account in the Plan be invested in the Great-West Key Guaranteed Portfolio Fund. Mr. Teets resides in Auburn, California.

10. At all relevant times, the Plan was an employee pension benefit plan within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). It was an individual account plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

11. Defendant Great-West is an indirect wholly-owned subsidiary of Great-West Lifeco, Inc. Great-West is headquartered in Greenwood Village, Colorado.

## FACTS

12. The Contract offers plans a so-called "Guaranteed Interest Rate" to be credited to the Fund. However, the Contract merely provides that the Guaranteed Interest Rate will never be

1  less than 0%.  The Contract does not explain that with the fees charged to plans that invest in the
2  Fund, plans could experience a net loss on their investment, depending on the credited rate
3  selected by Great-West.

4      13.    Great-West is not obligated to maintain the same crediting rate throughout the life
5  of the Contract.  Rather, Great-West has discretion to change the interest rate unilaterally at any
6  time:  the Contract states that "[t]he interest rate to be credited to the Group Contractholder will
7  be determined by [Great-West] prior to the last day of the previous calendar quarter."  Similarly,
8  marketing materials for the Fund state simply that the Fund credits interest to the contract holder
9  "on a portfolio basis" and "[t]he credited interest rate may change or stay the same each quarter."
10 The Contract sets forth no methodology for determining the credited interest rate.

11     14.    There is no set term for the Contract.  Great-West restricts plans' abilities to
12 terminate their investment in the Fund by paying out less than the full value of the plan account
13 in the event of Contract termination.  In the event of termination, Great-West pays out the
14 account as a single payment either reduced by a "market value adjustment" or at the book value
15 of the Fund at any date up to 12 months after termination of the Contract.  Great-West chooses
16 that date unilaterally.

17     15.    The Fund is one "Fixed Account" operated by Great-West.  Fixed Accounts are
18 investments open to holders of the Contract, which are backed by the General Account of Great-
19 West (in other words, all of Great-West's assets other than those held in any segregated
20 investment account).  Great-West has the right to make changes to existing Fixed Account
21 options, including the Fund, unilaterally upon "adequate" notice to the plan, and the absence of
22 an objection by the plan is considered consent to such changes.  The Contract sets no limits on
23 what constitutes "adequate" notice.

24     16.    The Contract provides that Great-West will deduct a Contract Maintenance
25 Charge from each participant account, and permits imposition of various other charges and fees,
26 including an Installation Fee, a Participant Account Charge, a Variable Asset Charge, and
27 Distribution/Withdrawal Charges.  The Contract also permits Great-West to impose a Contract
28 Termination charge if the Contract is terminated prior to Great-West's recovery of any and all

COMPLAINT                                -3-                              CASE NO.

"Start-up Costs." "Start-up Costs" is not defined. Total investment expenses (including, presumably, all of the aforementioned charges) are reported in the Plan's 401(k) Fee Disclosure as 0.89%, but the Contract leaves the amounts of these charges unspecified and places no limits on them. Moreover, each of these charges is in addition to Great-West's retention of the spread, the size of which Great-West determines as well.

17. The Fund's credited interest rate has declined precipitously since the Fund's inception in August 2006. It started at 3.55%, and Great-West opted to reduce it steadily thereafter until hitting a low of 1.25% in September 2013.

18. Upon information and belief, during the relevant time period, Great-West made and retained hundreds of millions of dollars annually from ERISA defined contribution retirement plans' investments in the Fund, and the amounts credited to the plans were consistently dwarfed by Great-West's huge investment earnings.

19. Even as it decreased the credited rate, Great-West's net investment income was in the hundreds of millions of dollars. Net investment income for Great-West's Retirement Services Segment was $399 million in 2010 and 2011, and increased by approximately $15 million to $414 million in 2012. Net investment income for Great-West's Retirement Services segment fell in 2013, but was still $351 million.

20. Plan documents and fee disclosure materials provided to Plaintiff pursuant to ERISA fail to disclose that Great-West can and does retain the difference between the credited interest rate it chooses to give retirement plans and its actual investment earnings on the funds it invests on behalf of the retirement plans.

21. Notwithstanding the inclusion of "Guarantee" in its name, the Contract did not guarantee payment of any particular benefit to plans or their participants. Instead, it promised only an unspecified rate of return greater than or equal to zero, minus fees. Investment risk was borne by the plans because Great-West could change the credited interest rate in its sole discretion and Great-West's investment decisions and actions affected the value of the Fund. Indeed, the actual and realized benefit to the Plan was, by the terms of the Contract itself, fundamentally contingent on investment decisions made by Great-West.

22. ERISA defines a "fiduciary" as anyone who exercises authority or control over the management or disposition of plan assets. 29 U.S.C. § 1002(21)(a).

23. The Contracts are themselves plan assets: they are purchased by plans in order to provide income to participants. The Contract provides that "[n]o portion of the amount contributed to the Group Annuity Contract, including earnings thereon, may be used for or diverted to any purpose other than the exclusive benefit of Plan Participants and their Beneficiaries." Nevertheless, contrary to this provision, Great-West diverted and continues to divert earnings to itself.

24. The Contract gives Great-West discretionary authority to change the credited interest rate (and to devise the method of determining that rate). Thus, Great-West is a fiduciary of the plans with respect to its management and administration of the GICs.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(1) or, in the alternative, 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of similarly situated persons ("the Class"):

> All participants in and beneficiaries of defined contribution employee pension benefit plans within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), who had funds invested in the Great-West Key Guaranteed Portfolio Fund from six years before the filing of this action until the time of trial.

26. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are, at a minimum, thousands of Class members.

27. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among such questions are:

(a) Whether Defendant is a party in interest with respect to the plans;

(b) Whether Defendant is a fiduciary of the plans;

(c) Whether the Contract gives Defendant unlimited discretion to determine the amount

of its own compensation;

(d) Whether Defendant set the credited interest rate artificially low for its own benefit rather than for the benefit of plans and participants; and

(e) Whether the compensation paid to Defendant under the Contracts is unreasonable or excessive;

28. There are no substantial individual questions among the Class claims on the merits of this action, and Plaintiff is not aware of any conflicts between himself and members of the putative Class.

29. Plaintiff's claims are typical of the claims of the members of the putative Class, as Plaintiff and all other members of the putative Class were harmed by Defendant's wrongful conduct. Plaintiff is aggrieved by the prohibited transactions and breaches of fiduciary duties he and all other members of the Class have suffered at Defendant's hands, and is intent on seeing such wrongs remedied. Neither Plaintiff nor his counsel have any interests that might cause them to refrain from vigorously pursuing the claims in this class action. Thus, Plaintiff is an adequate representative of the Class.

30. Class certification of Plaintiff's Claims for Relief is appropriate under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

31. In the alternative, class certification of Plaintiff's Claims for Relief also is appropriate under Fed. R. Civ. P. 23(b)(3) because common issues of law and fact predominate over questions affecting only individual members of the Class. The only individualized issues will be the amount of damage each member of the Class incurred from Defendant's breaches of fiduciary duty and prohibited transactions, and such damages can be readily calculated based on business records maintained by Defendant. Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Defendant has

1  obtained wrongful profits through overcharges that are, on an individual level, small and difficult
2  to detect but in the aggregate are an enormous drain on Class members' retirement assets.
3  Individual participants who have invested in the Key Guaranteed Portfolio Fund, and even most
4  plans, have an insufficient stake in the outcome of this matter to devote the substantial resources
5  that would be required to pursue it individually.

6  32.    On information and belief, the Class is easily ascertainable because the names and
7  addresses of the Class members are available from Defendant and/or the plans, and adequate
8  notice can be provided to members of the Class to the extent required by Fed. R. Civ. P. 23.

9  33.    Plaintiff is committed to fairly, adequately, and vigorously representing and
10 protecting the interests of the members of the Class, and has retained counsel competent and
11 experienced in class action litigation of this nature for this purpose.  Thus, the requirements of
12 Rule 23(g) are met.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

[Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3),
29 U.S.C. §§ 1132(a)(2) and (a)(3)]

17  34.    Plaintiff incorporates Paragraphs 1-33 as though set forth herein.
18  35.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan
19 fiduciary discharge his, her, or its duties with respect to a plan solely in the interest of the
20 participants and beneficiaries and with the care, skill, prudence, and diligence under the
21 circumstances then prevailing that a prudent person acting in a like capacity and familiar with
22 such matters would use in the conduct of an enterprise of a like character and with like aims.
23  36.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a
24 fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or
25 duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the
26 plan any losses to the plan resulting from each such breach, and additionally is subject to such
27 other equitable or remedial relief as the court may deem appropriate, including removal of the
28 fiduciary.

37. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409.

38. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

39. Defendant breached its duty of loyalty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). Defendant's breaches include but are not limited to the following: setting the credited interest rate for its own benefit rather than for the benefit of the plans and participants; setting the credited interest rate artificially low, including but not limited to reducing the rate even when its net return on assets invested pursuant to the Contract was in the hundreds of millions of dollars, and then retaining the difference for Defendant's own benefit; and charging excessive fees.

40. Defendant has profited from the fiduciary violations alleged herein in an amount to be proven at trial.

41. Defendant's actions caused losses to the plans in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF

**[Engaging in Prohibited Transactions Forbidden by ERISA § 406(b), 29 U.S.C. § 1106(b)]**

42. Plaintiff incorporates Paragraphs 1-41 as though set forth herein.

43. ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account."

44. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

45. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a

COMPLAINT                                    -8-                                    CASE NO.

1  suit for relief under ERISA § 409.

2  46.  ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

47.  Defendant was a fiduciary of the plans, as set forth in Paragraphs 22-24 above.

48.  Defendant engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), by dealing with the Contract in its own interest or for its own account. Specifically, Defendant set the credited interest rate for its own benefit rather than for the benefit of plans and participants, and set the rate artificially low, going so far as to reduce the rate even when the net return on assets invested pursuant to the Contract was in the hundreds of millions of dollars.

49.  Through the prohibited transactions, Defendant caused losses to the plans in amounts to be proven at trial but numbering in the millions of dollars.

## THIRD CLAIM FOR RELIEF

### [Engaging in Prohibited Transactions Forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a)]

50.  Plaintiff incorporates Paragraphs 1-49 as though set forth herein.

51.  ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

52.  ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), defines any person providing services to an employee benefit plan as a party in interest.

53.  ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such

other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

54. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409, 29 U.S.C. § 1109.

55. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

56. By entering into Contract with the plans, and administering the Contract, Great-West provides services to the plans. Accordingly, Defendant is a party in interest with respect to the plans. Moreover, Defendant is a fiduciary of the plans, as set forth in Paragraphs 22-24 above.

57. Defendant engaged in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), by selling the Contracts to the plans and receiving greater than reasonable compensation for the services provided pursuant to the Contract. Defendant has discretion to set the credited interest rate and has exercised its discretion to retain for itself an excessive portion of the "spread" between its investment earnings and the credited interest rate, in addition to charging various fees that were disclosed in name but not in amount.

58. Through the prohibited transactions, Defendant caused losses to the plans in amounts to be proven at trial but numbering in the millions of dollars.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays as follows:

**As to the First Claim for Relief:**

A. Certify this action as a class action under Federal Rule of Civil Procedure 23;

B. Declare that Defendant has breached its fiduciary duties to the Class and/or knowingly participated in breaches of fiduciary duty;

C. Enjoin Defendant from further violations of its fiduciary responsibilities, obligations, and duties;

D. Order Defendant to make good to the plans the losses resulting from its breaches

1  of fiduciary duty;

2        E.      Order that Defendant provide other appropriate equitable relief to the plans,

3  including but not limited to surcharge, restitution, providing an accounting for profits, imposing

4  a constructive trust and/or equitable lien on any funds wrongfully held by Defendant, or ordering

5  Defendant to disgorge any profits that it has made through breaches of fiduciary duty or knowing

6  participation in breaches of fiduciary duty;

7        F.      Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein under

8  ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

9        G.      Order Defendant to pay prejudgment interest; and

10        H.      Award such other and further relief as the Court deems equitable and just.

11  **As to the Second Claim for Relief:**

12        A.      Certify this action as a class action under Federal Rule of Civil Procedure 23;

13        B.      Declare that Defendant has breached its fiduciary responsibilities to the Plaintiff

14  Class;

15        C.      Enjoin Defendant from further prohibited transactions and violations of its

16  fiduciary responsibilities, obligations, and duties;

17        D.      Declare that Defendant engaged in prohibited transactions in violation of ERISA

18  § 406(b), 29 U.S.C. § 1106(b), by dealing with the GICs in its own interest or for its own

19  account;

20        E.      Order Defendant to make good to the plans the losses resulting from these

21  prohibited transactions;

22        F.      Order Defendant to disgorge any profits it has made through prohibited

23  transactions and impose a constructive trust and/or equitable lien on any funds received by

24  Defendant in the course of or as a result of prohibited transactions;

25        G.      Order that Defendant provide other appropriate equitable relief to the plans,

26  including, but not limited to, surcharge, restitution, providing an accounting for profits, imposing

27  a constructive trust and/or equitable lien on any funds wrongfully held by Defendant, or ordering

28  Defendant to disgorge any profits that it has made through prohibited transactions or knowing

1  participation in prohibited transactions;

2      H.    Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein under

3  ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

4      I.    Order Defendant to pay prejudgment interest; and

5      J.    Award such other and further relief as the Court deems equitable and just.

6  **As to the Third Claim for Relief:**

7      A.    Certify this action as a class action under Federal Rule of Civil Procedure 23;

8      B.    Declare that Defendant has breached its fiduciary responsibilities and/or duties as

9  a party in interest to the Plaintiff Class;

10      C.    Enjoin Defendant from further prohibited transactions and violations of its

11  fiduciary responsibilities, obligations, and duties;

12      D.    Declare that Defendant engaged in prohibited transactions in violation of ERISA

13  § 406(a), 29 U.S.C. § 1106(a), by selling GICs to the plans and receiving greater than reasonable

14  compensation for the services provided pursuant to the GICs;

15      E.    Order that Defendant make good to the plans the losses resulting from these

16  prohibited transactions;

17      F.    Order Defendant to disgorge any profits it has made through prohibited

18  transactions and impose a constructive trust and/or equitable lien on any funds received by

19  Defendant in the course of or as a result of prohibited transactions;

20      G.    Order that Defendant provide other appropriate equitable relief to the plans,

21  including but not limited to surcharge, restitution, providing an accounting for profits, imposing

22  a constructive trust and/or equitable lien on any funds wrongfully held by Defendant, or ordering

23  Defendant to disgorge any profits that it has made through prohibited transactions or knowing

24  participation in prohibited transactions;

25      H.    Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein

26  pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the

27  common fund;

28      I.    Order Defendant to pay prejudgment interest; and

1      J.     Award such other and further relief as the Court deems equitable and just.

Dated: June 4, 2014                      Respectfully submitted,

                                     LEWIS, FEINBERG, LEE,
                                     RENAKER & JACKSON, P.C.

                     By:      */s/ Nina Wasow*
                                    Nina Wasow

                                    Todd F. Jackson – SBN 202598
                                    Nina Wasow – SBN 242047
                                    Julie Wilensky – SBN 271765
                                    LEWIS, FEINBERG, LEE,
                                    RENAKER & JACKSON P.C.
                                    476 9th Street
                                    Oakland, California 94607
                                    Telephone: (510) 839-6824
                                    Facsimile: (510) 839-7839
                                    tjackson@lewisfeinberg.com
                                    nwasow@lewisfeinberg.com
                                    jwilensky@lewisfeinberg.com

                                    Garrett W. Wotkyns*
                                    Michael McKay*
                                    SCHNEIDER WALLACE COTTRELL
                                    KONECKY LLP
                                    8501 N. Scottsdale Rd., Suite 270
                                    Scottsdale, Arizona 85253
                                    Telephone: (480) 428-0145
                                    Facsimile: (866) 505-8036
                                    gwotkyns@schneiderwallace.com
                                    mmckay@schneiderwallace.com

                                    Scot Bernstein – SBN 94915
                                    LAW OFFICES OF SCOT D. BERNSTEIN,
                                    A PROFESSIONAL CORPORATION
                                    101 Parkshore Drive, Suite 100
                                    Folsom, California 95630
                                    Telephone: (916) 447-0100
                                    Facsimile: (916) 933-5533
                                    swampadero@sbernsteinlaw.com

                                    Todd Schneider – SBN 158253
                                    Mark Johnson – SBN 76904
                                    SCHNEIDER WALLACE COTTRELL
                                    KONECKY LLP
                                    180 Montgomery Street, Ste. 2000
                                    San Francisco, California 94104
                                    Telephone: (415) 421-7100

Facsimile: (415) 421-7105
tschneider@schneiderwallace.com
mjohnson@schneiderwallace.com

*Pro Hac Vice application forthcoming

*Attorneys for Plaintiff*

COMPLAINT -14- CASE NO.