**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-2330-WJM-NYW

JOHN TEETS,

      Plaintiff,

v.

GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY,

      Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS**

---

Plaintiff John Teets ("Plaintiff") brings this putative class action against

Defendant Great-West Life and Annuity Insurance Company ("Defendant") alleging that

Defendant breached its fiduciary duty in violation of the Employee Retirement Income

Security Act ("ERISA").  (Compl. (ECF No. 3).)  Before the Court is Defendant's Motion

to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) ("Motion").  (ECF No. 22.)

For the reasons set forth below, the Motion is granted in part and denied in part.

## I.  BACKGROUND

This case arises out of a financial product known as the Great-West Key

Guaranteed Portfolio Fund ("Fund"), which was operated and serviced by Defendant.

(Compl. ¶ 2.)  Plaintiff was a participant in the Farmers' Rice Cooperative 401(k)

Savings Plan ("Plan"), an employee pension benefit plan which offered various

investment opportunities to its participants, including the Fund.  (*Id.* ¶ 9.)  At all times

relevant here, Plaintiff elected to invest his Plan contributions in the Fund.  (*Id.*)

The investment relationship between Defendant and the Plan is governed by a Group Annuity Contract (the "Contract"), entered into on March 4, 2008.  (Compl. ¶ 2; ECF No. 22-2.)  Among other provisions, the Contract provides for a participant's investment to accrue interest at a rate set prior to each quarter.  (Compl. ¶ 13.)  The interest rate is determined unilaterally by Defendant, without any specified methodology.  (*Id.*)  However, pursuant to the Contract, the effective annual interest rate is guaranteed never to be less than 0%.  (*Id.* ¶ 12; ECF No. 22-2 at 14.)  Any Plan money invested in the Fund is not kept in a segregated account, but rather is deposited into Defendant's general account; the Fund is thus backed by Defendant's company assets.  (Compl. ¶ 15.)  Defendant earns various service charges and fees, as well as any net profit from the investment funds after interest is credited to Fund participants at the rate set at the beginning of the quarter (this difference in value is known as the "spread," and is retained by Defendant).  (*Id.* ¶¶ 4, 16.)  These service charges are not specified by the Contract, and are instead set by Defendant.  (*Id.*)

Plaintiff filed his Complaint on June 4, 2014 in the U.S. District Court for the Eastern District of California.  (ECF No. 1-1.)  Plaintiff brings three claims: (1) Defendant breached its fiduciary duty of loyalty under ERISA §§ 502(a)(2)–(3) by setting the interest rate artificially low and charging excessive fees in order to increase its own profits; (2) Defendant engaged in self-dealing transactions prohibited under ERISA § 406(b); and (3) Defendant caused the Plan to engage in prohibited transactions with a party in interest in violation of ERISA § 406(a).  (Compl. ¶¶ 34–58.)  Plaintiff seeks to bring his claims on behalf of a class of all participants in and beneficiaries of retirement plans under ERISA who had money invested in the Fund.

2

(*Id.* ¶ 25.)  On July 22, 2014, Defendant moved to transfer the action to this Court.
(ECF No. 1-19.)  Plaintiff did not oppose transfer (ECF No. 1-29), and the case was
transferred on August 21, 2014 (ECF No. 1).

Defendant's Motion was filed on September 11, 2014.  (ECF No. 22.)  Plaintiff
filed a Response (ECF No. 27), and Defendant a Reply (ECF No. 31).  The Motion is
ripe for disposition.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to
dismiss a claim in a complaint for "failure to state a claim upon which relief can be
granted."  In evaluating such a motion, a court must "assume the truth of the plaintiff's
well-pleaded factual allegations and view them in the light most favorable to the
plaintiff."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.
2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint
contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.*
(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to
dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the
spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v.
City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted).
"Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual
proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.*
(quoting *Twombly*, 550 U.S. at 556).

## III.  ANALYSIS

Defendant raises two arguments that Plaintiff's claims should be dismissed: (1)

the Fund falls under the guaranteed benefit policy ("GBP") exemption in ERISA, and

thus Defendant was not an ERISA fiduciary that could have breached any fiduciary

duties; and (2) Plaintiff's Claim 3 fails because Defendant cannot be both a fiduciary

and a party in interest under ERISA § 406(a).[1]  (ECF No. 22.)  The Court will consider

each argument in turn.

## A.    GBP Exemption

At the center of each of Plaintiff's claims is the allegation that Defendant failed to

comply with ERISA's requirements for fiduciaries of plan assets.  Under ERISA, a

person is a "fiduciary with respect to a[n employee benefit] plan to the extent (i) he

exercises any discretionary authority or discretionary control respecting management of

such plan or exercises any authority or control respecting management or disposition of

its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in

the administration of such plan."  29 U.S.C. § 1002(21)(A).  A fiduciary is required to

"discharge his duties with respect to a plan solely in the interest of the participants and

beneficiaries and [] for the exclusive purpose of: (i) providing benefits to participants

and their beneficiaries; and (ii) defraying reasonable expenses of administering the

plan . . . ."  *Id.* § 1104(a)(1).

Defendant argues that it is not a fiduciary with respect to the assets invested in

the Fund because ERISA contains an exemption for a "guaranteed benefit policy."

---

[1] In the Motion, Defendant also argues that Plaintiff's claims are barred by the statute of limitations.  (ECF No. 22 at 15–20.)   Earlier this week, the Supreme Court issued a ruling reversing the line of cases on which Defendant had relied.  *See Tibble v. Edison Int'l*, __ U.S. __, 2015 WL 2340845 (May 18, 2015).  Accordingly, Defendant has appropriately withdrawn its statute of limitations argument, and the Court need no longer consider it here.  (*See* ECF No. 44.)

(ECF No. 22 at 8–14.)  "The term 'guaranteed benefit policy' means an insurance policy or contract to the extent that such policy or contract provides for benefits the amount of which is guaranteed by the insurer."  29 U.S.C. § 1101(b)(2)(B).  The GBP exemption reads as follows:

> In the case of a plan to which a guaranteed benefit policy is issued by an insurer, the assets of such plan shall be deemed to include such policy, but shall not, solely by reason of the issuance of such policy, be deemed to include any assets of such insurer.

*Id.* § 1101(b)(2).  Thus, the GBP exemption is not a complete exemption from application of ERISA; rather, when a plan participant invests in a GBP, the policy or contract itself is an asset of the plan, but the invested money that is subject to the policy or contract becomes an asset of the insurer rather than an asset of the plan.  Since GBPs contractually provide guaranteed payments to beneficiaries while commingling their investments with the insurer's general accounts, the exemption allows the insurer to manage its assets—including investments deposited under GBPs—in the insurer's interest without the potential for conflicting fiduciary duties to manage GBP investments solely for GBP beneficiaries.  *See Mogel v. UNUM Life Ins. Co. of Am.*, 547 F.3d 23, 27 (1st Cir. 2008).

The U.S. Supreme Court has provided guidance regarding the application of the GBP exemption.  *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86 (1993) ("*Harris Trust*").  Noting that "Congress commodiously imposed fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive," *id.* at 96, the Supreme Court held that a contract's investment model "fits within the guaranteed benefit policy exclusion only if it allocates investment

risk to the insurer.  Such an allocation is present when the insurer provides a genuine guarantee of an aggregate amount of benefits payable to retirement plan participants and their beneficiaries."  *Id.* at 106.  In contrast, a contract lacked the requisite guarantees to come within the GBP exemption where "plan participants are undeniably at risk inasmuch as the future amount of benefits—payments to participants and beneficiaries—attributable to the free funds can fall to zero."  *Id.* at 105–06.  As to such funds, the Supreme Court held, "these indicators are key: the insurer's guarantee of a reasonable rate of return on those funds and the provision of a mechanism to convert the funds into guaranteed benefits at rates set by the contract."  *Id.* at 106.  The Supreme Court further advised that the GBP exemption must be narrowly construed.  *Id.* at 97.

With these standards in mind, the Court must determine whether the GBP exclusion applies to the Fund at issue here, and consequently, to what extent Defendant is a fiduciary of Plan assets.  Defendant argues that the Fund is a GBP because the risk that the underlying investments will lose value is borne by Defendant, not by participants such as Plaintiff, because Defendant has already guaranteed a payout of 0% or more at the beginning of each quarter.  (ECF No. 22 at 9–15.)  According to Defendant, this pre-set interest rate constitutes a genuine guarantee of payable benefits to participants.  (*Id.*)  Defendant supports its interpretation of the GBP exemption by citing a Department of Labor information letter which applied *Harris Trust* to a particular group annuity contract, concluding that it appeared to constitute a GBP.  (*Id.* at 12–13.)  However, as Defendant admits, such opinion letters do not carry the

force of law, and are case-specific. (*Id.* at 12 n.5.) Thus, the Court must still apply *Harris Trust* to the Contract at issue here.

As a threshold matter, the fact that the Fund's assets are placed in Defendant's general account is not dispositive. Recognizing that the potential for conflicts in the management of general account assets and plan assets was the policy reason for the GBP exemption, the Supreme Court nevertheless held that such potential conflicts do not automatically preclude fiduciary duties from applying to plan assets under ERISA. *Harris Trust*, 510 U.S. at 101 ("a plan's deposits are not shielded from the reach of ERISA's fiduciary prescriptions solely by virtue of their placement in an insurer's general account").

Arguing that the GBP exemption does not relieve Defendant of fiduciary duties under ERISA, Plaintiff contends that the Contract's provision permitting Defendant to set an interest rate of 0% means that participants bear a risk and benefits are not truly guaranteed. In any event, Plaintiff contends, even if the GBP exemption *does* apply, the Contract is still a Plan asset, and Defendant's acts in setting the interest rate amount to the discretionary administration of the Contract, and thus are acts to which a fiduciary duty applies. (ECF No. 27 at 7–13.) In support of the first of these arguments, *Harris Trust* suggests that courts should consider "the insurer's guarantee of a *reasonable rate of return*," and that "plan participants are undeniably at risk inasmuch as the future amount of benefits . . . *can fall to zero*." 510 U.S. at 106 (emphasis added).

While Defendant cites numerous out-of-circuit cases interpreting similar financial

products to be GBPs,[2] Defendant fails to distinguish the explicit guidance of the
Supreme Court in the instant case.  Defendant argues that it has never actually set the
interest rate for the fund at 0%—it has always been at least 1.25% since the Fund's
inception—and that the question of whether the rate of return is reasonable is not part
of the statutory definition of a GBP.  (ECF No. 31 at 3–4, 7.)  These arguments ignore
the plain language of the Supreme Court's decision in *Harris Trust*, which advises that a
participant bears risk where its future benefits "can" permissibly fall to zero, and that
courts consider whether a "reasonable rate of return" is guaranteed.  510 U.S. at 106.
Furthermore, it is undisputed that Defendant's discretionary decisions in setting
quarterly rates "affect the amount of benefits retirement plan participants will receive,"
and thus fall under the broad definition of ERISA fiduciary.  *Id.* at 96.  These factors
militate against applying the GBP exemption.

   The Court notes that the Contract here bears many of the indicia of a GBP as
defined under *Harris Trust*: it allocates to the insurer the risk of loss of principal, and
guarantees a benefit amount at the beginning of each quarter.  Nevertheless, the Court
cannot definitively conclude at this stage of the case that the rate of return was
"reasonable," that Defendant's discretionary authority did not extend to management of
Plan assets, or that the Contract's discretionary rate model did not allocate risk to Plan
participants invested in the Fund sufficient to foreclose applicability of fiduciary duties

---

   [2] Defendant heavily relies on a Seventh Circuit decision, *Associates in Adolescent
Psychiatry, S.C. v. Home Life Insurance Co.*, 941 F.2d 561 (7th Cir. 1991), arguing that it
established that the key factor in applying the GBP exemption is whether the interest rate
is declared in advance.  (ECF Nos. 22 at 9–11; 31 at 4–6.)  While persuasive, the Seventh
Circuit's decision predates *Harris Trust*, and is not binding in this Circuit.  Instead, the Court
must decide this case under binding Supreme Court precedent.

under ERISA.  These determinations involve questions of fact more appropriate for consideration on summary judgment.  Accordingly, dismissal under Rule 12(b)(6) is inappropriate on this basis.

Because Plaintiff has sufficiently pled that Defendant had discretionary authority in managing Plan assets, the Court concludes that Plaintiff has stated a claim that Defendant was a fiduciary under ERISA when it took the challenged actions.  *See* 29 U.S.C. § 1002(21)(A).  The Court therefore denies Defendant's Motion to the extent that it contends otherwise.

**B.    Claim 3: ERISA § 406(a)**

ERISA § 406(a) states that, unless an exemption applies, "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—"

> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>
> (B) lending of money or other extension of credit between the plan and a party in interest;
>
> (C) furnishing of goods, services, or facilities between the plan and a party in interest;
>
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
>
> (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

29 U.S.C. § 1106(a)(1).  Plaintiff's Claim 3 asserts that Defendant is "a party in interest with respect to the plans," as well as a fiduciary of the plans, and thus that "Defendant engaged in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a),

by selling the Contracts to the plans and receiving greater than reasonable compensation for the services provided pursuant to the Contract."  (Compl. ¶¶ 56–57.)

Defendant contends that Plaintiff's Claim 3 should be dismissed because it is predicated on the same party—Defendant—in the roles of both the fiduciary and the party in interest under § 406(a).  Because Claim 3 effectively alleges that Defendant (as fiduciary) violated ERISA by allowing the Plan to enter the Contract with Defendant (as party in interest), Defendant contends that Plaintiff's Claim 3 is actually duplicative of its Claim 2, which alleges that Defendant engaged in self-dealing in violation of ERISA 406(b).  (*See* Compl. ¶ 48 (citing 29 U.S.C. § 1106(b)).)

In response, Plaintiff contends that Defendant could be liable on Claim 3 for assisting *other* fiduciaries—"Plan-level fiduciaries"—in entering the Contract, knowing that it was a prohibited transaction, and that the prohibited transaction alleged is that between the Plan and Defendant as party in interest.  (ECF No. 27 at 19.)  The Court notes that this theory of Plaintiff's Claim 3 could arguably state a claim under ERISA § 406(a).  However, Plaintiff did not plead that theory of Claim 3 in his Complaint. Instead, the Complaint explicitly asserts that Defendant is liable under ERISA § 406(a) because Defendant is both a party in interest and a fiduciary, and it sold the Contract to the Plan, consequently receiving excessive compensation.  (Compl. ¶¶ 56–57.)  The Court concludes that as pled, Claim 3 alleges that Defendant has engaged in self-dealing, which is a violation of ERISA § 406(b), not (a), and is thus duplicative of Claim 2.  *See Danza v. Fidelity Mgmt. Trust Co.*, 533 F. App'x 120, 125 n.3 (3d Cir. 2013) ("ERISA Section 406(a) . . . deals with transactions between two distinct parties.  Self-dealing transactions are addressed by ERISA Section 406(b) . . . .").

10

Accordingly, the Court grants the Motion as to Plaintiff's Claim 3, and dismisses that claim.  However, given the arguments presented in Plaintiff's Response, the Court cannot say that permitting Plaintiff to amend Claim 3 would be futile at this stage of the proceedings.  *Cf. Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (district court "may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint").  Accordingly, Claim 3 is dismissed without prejudice.  Should Plaintiff seek to amend his Complaint, he may promptly file an appropriate motion.

## IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.     Defendant's Motion to Dismiss (ECF No. 22) is GRANTED IN PART and DENIED IN PART;

2.     The Motion is GRANTED as to Plaintiff's Claim 3 under ERISA § 406(a), 29 U.S.C. § 1106(a), and that claim is DISMISSED WITHOUT PREJUDICE; and

3.     The Motion is DENIED in all other respects.

Dated this 22nd day of May, 2015.

BY THE COURT:

_____
William J. Martínez
United States District Judge

11